Michael Keneally, on behalf of Tesla Countless employers around the country require their employees to wear a standard-issue company uniform. Yet the NLRB held here, for the first time in its long history, that employees have a presumptive right to discard their company uniforms and replace them with apparel of their choosing. Now, uniform requirements are presumptively unlawful unless the employer can demonstrate to the board's satisfaction, after potentially years of proceedings, that its uniform policy is narrowly tailored to a special circumstance. And that's true even when there's no claim that the policy was adopted for improper reasons or enforced in a discriminatory way. As I understand it from the policy, correct me if I'm wrong, employees are still allowed to have some sort of a union emblem or sticker or other indication on the required black uniform? That's exactly correct, Your Honor. There's no limitation in the policy on the types of equipment, and that would include union stickers. And, in fact, the record here is quite clear that union stickers were continuously worn without any sort of repercussion on the Tesla teamwear. The only issue here is whether the National Labor Relations Act allows employees to replace their Tesla teamwear apparel with a union shirt. Okay. Let's drill down a little on that legally and factually. Legally, so you agree that the law is clear if it was a no-button policy, in other words, no emblems, items, insignia, whatever word we want to use, just the uniform. That would be violative. That would be an unfair labor act. Unless the employer could show the special circumstances. Special circumstances. Yes. Okay. And so then that's helpful legally. So it's uniform policy, but it's encouraging or allowing union speech in the form of what we'll call, in In-N-Out Burgers, we call items. Elsewhere, it's insignia, emblems. So factually, can you give me a record site for where it is clear to employees that they can have items, not just stickers on shirts, which all of us know a sticker is hard to keep on a shirt. So where is the clearest record statement as to the permissiveness of union speech, other than the apparel? Well, I, I, I don't think there's any, uh, argument that employees will agree. I'm just asking for a record site to support that Tesla is absolutely adhering to what I think is bedrock law, that various union items can be affixed. When you say the policy doesn't forbid it, that sounds like a negative. The policy doesn't actually say that. It's just an interpretation that it doesn't. So what's the best record site that Tesla is saying? Absolutely speak in favor of your union. Just don't change out our uniform. So I would point to 6-6-4-1 on the record on appeal, which is from the supplemental decision and order, where the board says that, um, from August 2017 onward, um, the respondent, Tesla, prohibited production associates from wearing the black union shirts in place of teamwear shirts, but continued to allow them to wear union stickers on the required team wear. That speaks to stickers because that was the policy. I don't think, um, that even the board argues that, uh, in addition to stickers, buttons or pins would be necessary here because they would quite, quite clearly present a risk of, uh, mutilations to the, the still curing paint on Tesla vehicles. But that, that's never been an issue here. The issue has been whether stickers are enough or whether stickers plus union shirts are what the law requires. And we cite some other places in the record from the, the hearing transcript where employees, uh, both supervisors and production associates testify to the frequent wearing of, uh, stickers both on clothing and union shirts. What about stenciling? Could they stencil on? Could they stencil on? I don't think there's anything in the record that speaks one way or the other on, on stencils. So we're citing to the board, there's, there's just nothing in the policy that even mentions the stickers, but the record suggests stickers. Everyone accepts stickers are the way to go. Yes. Okay. Um, to, but I, I do want to emphasize here that the expansion from what, what your Honor is calling items or, or I think typically are grouped together as union pins, buttons and stickers to, um, union clothing does mark a radical expansion of the law. And instead of offering strong justifications for that expansion, such as an argument that those items are insufficient and that it would be much more effective to communicate using t-shirts, the board's decision doesn't go that route. It says instead that employees really have the presumptive right to decide for themselves how best to, uh, uh, to communicate with one another in order to advance their, their interests under the statute. That's not the law and it never has been because if it were, then the other lines that have been drawn by the board and the Supreme Court over the years on when, uh, different forms of communication are presumptively lawful or unlawful would all fall by the wayside. Employees would get to decide for themselves that actually we'd like to be able to engage in solicitation during working time. But it's been clear since the beginning of the statute that that, even though it might be a very effective way of, of drawing up support for the union is not something that is presumptively, uh, a right under the statute. The closest court that did seem to step in the direction you're saying, which is to remove the special circumstance test at all from apparel uniform policy, is the D.C. Circuit in Roe v. Conner. Correct, Your Honor, in World Color. But there they were very, you know, they were very fractional. They remanded. There's no other words, correct? They did remand. So, so there's nothing to suggest that this uniform only is pretext, that it's trying to suppress speech, nothing in this record. No, and in fact, there's a contrary finding by the Supreme Court. Okay. And is there also nothing here that suggests there's been selective enforcement? In other words, shirts that, that, that Tesla has tolerated other shirts, correct? There is no evidence of selective enforcement. 655-7 is from the ALJ's decision where she expressly found, um, that, uh, that Tesla did not disparately enforce the team wear. And that's based on documentary evidence, not just, um, testimony. Uh, there was a list of employees who were told that they needed to wear team wear. And out of those, I think it was eight employees, only one of them was even wearing a union shirt. So the, the record there is clear. And I think that's why neither the union nor the, the board accepted to that finding. We're bound by in and out. So you accept it's a very deferential limited standard. We would have to say this is irrational. This construct, in other words, forcing companies to justify is that, but I did read in your brief, I thought a lesser argument, which is even if we do require a special circumstance for a uniform policy, you, you don't think they met that. Is that, is that fair to say that's a secondary alternative argument you're making? I think it is an alternative argument. Yes, Your Honor. And on that point specifically, I would point to the Fourth Circuit's decision in Eastern Omni Constructors where the court there emphasized one of the points we make on our first argument, that there were alternative channels for communication. That was a case about hard hat stickers. So employees were allowed to put stickers on their clothing, but they weren't allowed to put any stickers on their hard hats, even union stickers. And even there, the Fourth Circuit said that it was such a de minimis infringement on any ability to communicate because of the ability to place stickers on clothing that the board's special circumstances analysis didn't hold up. And so that, that would be, I think, and the reason why the, the policy was justified there was because the stickers that were on hard hats were employer stickers that showed the employee's level of training and what kind of tasks they were able to perform safely. And the Fourth Circuit said, if you also allowed the addition of employee, of union stickers, that would eliminate or at least dramatically reduce the ability of the existing stickers to be able to provide that sort of signaling function at a quick level, at a quick glance kind of. So that's accepting the framework to special circumstance, but saying the company It did, although had a justification. Correct. But part of the reason why the company's justification flew, whereas it didn't hear according to the board, was because the Fourth Circuit said the board has to take into account the ability of employees to express their views through other means. And because the special circumstances in a, in a, on a sliding scale, as it were, in a less demanding way. And that's consistent with the Supreme Court's instruction to balance both the employer's side of the calculus with the employee's side of the calculus. And before you get to the special circumstances test at all, I think the Supreme Court's decision in Babcock and Wilcox, which is one of the cases we cited, it dealt with the distinct, the, the ability of union organizers, non-employees, to come onto the work premises to communicate about the benefits of unionization. And the Supreme Court reversed the board's decision that that was kind of like the Republic Aviation scenario of just employee speech. Because the board failed to draw a distinction between non-employees and employees, which is a very different distinction from the point of view of the employer. Because the employer has property owner rights that are much more negatively affected when non-employees can come under, can come onto the premises under the statute versus just the employees who are at the workplace every day anyway. And in that case, the Supreme Court said that this was an unreasonable balance. So to go back to your Honor's question about when the, the board has overstepped by drawing irrational presumptions, that's, that's the case I would cite as Exhibit A, I think, for where the Supreme Court said that this goes too far. And I think then in the D.C. Circuit case, the reason why there was a remand was because there was still a factual dispute about whether the sticker addition was allowed under the company's policy. Whereas here, there's no dispute about that. And I, as I cited to your Honor before, there's a, there's a finding from the, from the board about the ability to wear stickers. But if the court goes back to look at the decision from remand on the D.C. Circuit, the, the board on remand says that what the D.C. Circuit had done was to highlight the distinction between a ban on union caps and a ban on caps bearing union insignia. And that's at 369 NLRB No. 104 at page 2. And that's exactly the distinction, I think, that the board overlooked here. Because there was no ban on union insignia insofar as it was perfectly permitted to place union stickers on the Tesla team wear. Well, just, you know, it sounds a little absurd, but I think it, these, this gets down into the granular. So, if stickers are falling off, stencils presumably okay? Or you don't want to commit to that? I think that's a fair point. Or at least, you know, setting aside a special circumstances argument that might arise with stencils, I haven't really thought about that. Arm bands, that gets closer, right? Or? Yeah. I think arm bands would be another way of doing it. But there was no request for that kind of accommodation here. And I, and I think that the accommodation that was drawn is really the accommodation that Republic Aviation itself contemplates. Where if employers want to require company uniforms, then they have to allow the addition of union messages. Because that's part of the ability to communicate pro-union views in the workplace. But here that addition of, of, of union stickers was perfectly permitted. And, and therefore, the, the balance that comes out of Republic Aviation is, is actually the balance that was struck in Tesla's policy. But if you had a different scenario where stickers were not up to the task for some reason, then I think that there would have to be other accommodations potentially. Before your time's up, you relied on Hector County, our en banc decision. And, and you saw the response in the brief. It is the government context, Hatch Act, Pickering. What do you, how do you draw support from Hector County? Well, I think Hector County is, is illustrative because it, it identifies some of the general reasons that an employer might want to have a uniform requirement. And, you know, the circumstances and like things like employee safety or, or avoiding damage to the product. But I think that employers don't necessarily adopt uniform policies thinking, well, we need this very specific, you know, safeguard against this problem. You know, a lot of times uniforms are nice because they do foster esprit de corps or a sense of, of, of all being on the same team working toward a common goal. I think that's kind of the, the point I would draw from Hector County. And that's not limited to the law enforcement context. And in fact, the court there, the en banc court did rely on some NLRB private sector cases like the Burger King case and the Harrah's Casino case. Burger King case was the more recent of the two, in 1984, six. And that's been criticized. It has. And we're not, we're not taking it to its full. I think it's been criticized for adopting a per se. A no button rule at all, right? Yes. For employees who are in contact with customers, that's, that's a pretty categorical rule that not all courts have agreed with. And that's also the Harrah's case as well. But that's not the issue we have here. I think that the point I was raising just in citing those cases was that I don't think it's fair to say that the public sector and the private sector are completely apart from each other when it comes to the benefits from an employer's perspective of uniforms. You, you've saved time for rebuttal, Mr. Connolly. Thank you, Your Honor. Mr. Jost. May it please the court. My name is Micah Jost for the Labor Board. I'd like to begin just by going directly to Judge Hickinson's question about the record at Joint Appendix, excuse me, Record on Appeal 3208 is the 2017 General Assembly expectations. There is no statement there affirming that employees have the right to wear any sort of union insignia. And I've heard for the first time this morning that Tesla believes that employees would in fact be allowed to wear stencils or armbands. But he was pointing out that that was, that was a finding. Did, did he accurately state  It is correct, Your Honor. Neither side can test that finding, so it's theirs. It's in the record. I'm simply addressing the question about whether Tesla expressly said that. It never did. But you're, you're, you're spending time arguing about nothing. Both, both sides agree that it was allowed. Very well, Your Honor. But the fundamental point that I heard from opposing counsel was that employees under the board's decision have a presumptive right to decide for themselves how to communicate. I couldn't agree more. That is exactly the principle that the Supreme Court and the board have recognized for the entire history of the act. And that is tempered when an employer has a legitimate reason for limiting that right. That is exactly the framework that was applied in cases like Republic Aviation. I heard counsel say that under that theory employees would be able to solicit even during working time. But in Republic Aviation, the board recognized that when employees are soliciting during working time, the employer inherently has an interest in stopping that because it tends to require an immediate response. It tends to distract. The board, however, and the Supreme Court in cases like Beth Israel and Central Hardware affirmed that the fundamental right here is, quote, a right of freedom of communication. An individual is not free to communicate if someone else is prohibiting one medium or, as we have here, effectively prohibiting all media except for a single one that it is permitting. Okay. I mean, am I right that the special circumstance framework emerged out of no-expression cases? In other words, uniforms that allowed no buttons, no anything? That's not correct. That's not correct? No. Well, I guess, because I don't see many cases that are apparel is equivalent to insignia. Right? It seems like the big accommodation is, if you're going to have apparel uniforms, you have to let them still express themselves pro-union through some sort of item attachment. And they would say, we're doing that. And the record, the finding appears to suggest they are. What's the case that says employers have to justify just a uniform when there's no animus, there's no selective enforcement, and they give outlets? Yes. So there are at least two cases where the board has found that an employee has the right to replace an item of a uniform in order to express their pro-union sentiments. The Meyer case, which was enforced in the Sixth Circuit, and more recently the Long Beach Memorial Medical Center case in Meyer, the employees were wearing, attempting to replace their company jackets, their company hats, and they were also attempting to wear buttons. And the balance that the board struck applying the special circumstances framework in the end was that when employees are in the front of the shop, when they have public contact, they have to still be allowed to wear small buttons, which are unobtrusive, but they can be foreclosed from wearing a larger union jacket, which would have a larger, more distracting emblem and which might prevent customers from finding people who they're trying to get service from inside the store. But in the back of the store, the employer did not have a special circumstance, didn't have a legitimate reason that was narrowly tailored for requiring employees to take off their union jackets, to take off their union hats. In the Long Beach Medical, Memorial Medical Center case, um... So, I mean, I'm simplifying to say, what the HESO wants is the front, they want the first half of that. That's exactly right. They are acting as if they had a public image justification or as if they had the sort of law enforcement justifications that this Court talked about in Hector County, where again, the cases they were relying on from the board dealt exclusively with public image in cases like Burger King. And Tesla is asking for that kind of rule to apply instead to factory workers, where Tesla has conceded in its briefs that there is, in fact, no public contact for these employees. In Long Beach Medical Center, the Tesla asserts in its reply brief that there was no alternative option for presenting union sentiments. That is not correct. In that case, the employer argued that the individuals could wear necklaces, they could wear earrings, they could have a union message tattooed, they could put union messages on their fingernails. And the board expressly said that the fact that employees have alternative channels does not constitute a special circumstance. And the Fourth Circuit said the exact same thing in Eastern Omni. In that case... What is there that is insufficient as a means of communication about what we've been calling stickers? Sticker says, I'm a union member, go union, union is good, whatever the stickers say, identifying support for the union. So in what way is that an insufficient means of communication in terms of striking some kind of employer-employee balance? Sure. So in this case, the board didn't make a finding that one form of communication was inferior to another. They are simply different forms of communication. I will note for the record that the stickers here are 1.5 inches in diameter. That's a record on appeal 859. You can see an image of the sticker at 3204. We're talking about a small sticker. I would submit that, for example, if the court were to take the insignia hanging behind it, the flag of the United States of America and the flag of the Fifth Circuit, and place a small sticker on the backwood paneling there, I think it would convey a substantively different message. It would convey a different sense of weight, a different sense of the importance of the circumstance. Similarly, if you had a sports fan wearing a shirt and you went up to them and presented them instead with a small sticker and asked if they would feel that that would convey the same message in support of their team, I think many people would disagree. Here we have employees who could wear both if they choose. For example, in the Cerver case, enforcement in the Tenth Circuit, we have employees who reinforced and strengthened their message and allowed them to convey an extra sense of enthusiasm and support for the union. In this case, we have evidence, a record on appeal 237 and 238, that these individuals were coordinating to wear union shirts on Fridays so they could, for example, wear stickers all week long and then join together in a demonstration of coordination and concert to wear those things together. What answer do you have? I mean, maybe you'll say this is true, but the Chamber of Commerce amicus brief says that the rule you're asking us to write is that any employer's dress code is presumptively unlawful without a special circumstance. Are you asking us to write that? The rule that has been written since Republic Aviation is that any restriction on employees wearing an insignia is— Okay, no, but that's recharacterizing it, and the insignia world is different from the apparel world in my brain, and by all means, push against it. But I'm just asking you very specifically, are you stating that the proposition is that every single company in the United States that has a uniform policy, that is a presumptive unlawful labor act violation without a special circumstance justification? Is that the rule? What I would say is that if an employer has no legitimate reason for requiring a uniform, and if they do not allow any exemption for Section 7 materials, so if they have— Okay, but that's recharacterizing my question, because the way I see this record and I hear him urging is they do allow exemptions. They are allowing the exemptions, and I'm also hearing that it is neutral, which is what Hector County explores a lot, so it avoids all the concerns that this is a pretext, that they're trying to suppress speech. They're just saying, we want to look out at our workforce and we see the team Tesla. That's just the spirit we want. So it seems neutral, and then they say if you want to express your union, you can go with items and emblems and armbands and stencils. We just want our shirt on you. And so, I know I talk too much, but are you or aren't you telling us that the state of an employer has a uniform policy that is a presumptively unlawful policy without a special justification? So, Your Honor, again, I don't mean to recharacterize— It's a yes or no question. Yeah. It is a yes or no question. Yes. Okay. If the policy does not permit an exemption, I'm not saying in an alternative way, I'm saying if the policy says, for example, you have to wear black shirts that have our logo, then that restricts employees' right to wear a black shirt with a union logo. If the policy says you must wear black shirts with a logo, with our logo, but we acknowledge employees—I'm not formulating a precise language, I'm not proposing how they should phrase it—but if they make an exemption and say we are recognizing employees' statutory right to wear different shirts that still preserve our specific interest in black— Okay. I mean, that's a good, strong answer. I have to think about it. But it is in tension, I think, with world color. I know the court was careful and remanded, but fundamentally, what I drew from there is the same thing Judge Garwood was emphasizing in Hector County, which is it changes the assessment when it's neutral and there are exemptions. So first of all, I think if you look closely at the world color decisions, I don't believe they contain anything resembling the kind of analysis that Tesla attributes to them. Okay. There was a narrow factual question there because of imprecise and potentially ambiguous language in the board's initial decision talking about hats bearing union insignia. If you look at the board's decision, if you look at the ALJ's decision, there is no discussion there about whether there was an adequate alternative in wearing buttons versus hats. There was simply a factual finding that this was undisputed, that you could not have caps bearing union insignia. And when it came up before the D.C. Circuit, the D.C. Circuit looked more closely at the filings and said, no, this was disputed. It remanded for resolution of that specific factual issue. And if you look at all three decisions— Are there any facts that are relevant to either your analysis or theirs that stay in dispute here? Are there any facts in dispute? Yeah. Is there any lurking, any findings or anything as to animus against the union, or they allow other shirts to be worn, or really it's just we really are presented with a legal question here, I think. We're presented with a legal question, Your Honor. Okay. So there's no—we agree with opposing counsel that the Board did not find—I mean, certainly there's evidence of animus all through this case, but the Board did not rely on that specifically for this finding. But I've heard repeated references to the fact that it was content neutral, and of course there's been talk about the alternative channels. Counsel has suggested that there are no cases where those types of policies have fallen under special circumstances analysis. I would submit that there are at least eight in our brief, eight cases in which a content was discriminatory that permitted alternative, sufficient channels of communication. There are eight such cases. In four of them, special circumstances were applied, finding a violation. In four, the same analysis was applied, finding that the policy was lawful because there were special circumstances. The cases finding a violation are Malta Construction, Surveyor, and Northeast Industrial, and Long Beach Memorial Medical Center. The cases that applied special circumstances to this sort of policy and found that there was a sufficient reason are Eastern Omni, Albus Plastics, Casa San Miguel, and this Court's decision in Davis and Paxson. So— So if we move to that second part, since you only have three minutes left— Yes, Your Honor. The special circumstance they assert is they need to visually look out and be able to distinguish who's on the production line or not. Right. That— And the Board found that their primary interest in that regard is having employees who are not supervisors and who are not inspectors wearing black so that they can differentiate between those people, and that they can protect that interest by having employees wearing black union shirts. So the legitimate interest in that instance, and the Board assumed that they had a legitimate interest in having people wearing black, and they said the union is simply asking to wear black shirts that protect your interest, and it can—it does not have—the employer does not have an interest in preventing employees from doing that. Even if it did impose some small incremental burden on the visual management that Tesla asserts, first of all, we have the fact that Tesla does not, in fact, pursue that interest with the kind of vigor that would suggest that it's essential to completely restrict here because, of course, it doesn't actually ban people in other departments from wearing Tesla shirts. It doesn't ban people from wearing plain black shirts. Mr. Joyce, let me ask you this, not even speaking for myself, but talking about possibilities. Were we to disagree with what the Board did, find considerable merit, let's say, in the dissenting Board of Members' opinion, that the balance that the NLRA is supposed to strike between the two sides in union disputes has not—has been distorted? What is the proper remedy, obviously, of the previous law, to some extent, as being embraced by Tesla, a boring opinion? What would we say? It would be a gross error on our part from your view, no doubt, but were we to disagree with you, what would be the proper remedy? I think it's difficult to say, Your Honor. You would certainly need to remand for reconsideration in view of whatever the Court decides. Well, worry about reconsideration is—it just becomes more words to justify the same result. Well, that may be the case, Your Honor, because when they say that they would prefer the Boeing or the Walmart standard, if you look at those cases under Walmart, the Board still required a legitimate interest, and it still required narrow tailoring, even for the people wearing their name tags at the back of the shop. The Board found a violation there, where there was a content-neutral, non-discriminatory restriction that was allowing alternative options, and the Board said, even under that more deferential framework toward employers, it still found a violation. So Tesla, I think, would still struggle under that standard, and, of course, it's been overruled, but if the Court were to remand, that's the standard they would still have to face. They've also suggested that the First Amendment plays some role in addressing this, and there, again, I would note, when they say they're relying on decades of free speech jurisprudence, when the government imposes content-neutral speech restrictions, in time, place, and manner examples, for example, you have to still show a significant government interest and narrow tailoring, which is what they had to show here. So if there are no further questions, I'd like to request enforcement of the Board's order. All right. Thank you, Mr. Josephs. Thank you, Your Honor. Mr. Curry? Good morning, Your Honors. I'm speaking today on behalf of Intervenor United Auto Workers, and for the Tesla workers who are prohibited from expressing their union support via their preferred method, UAW t-shirts. I want to jump to something that's come up repeatedly that UAW strongly contests. There have been many unfair labor practices by this employer in this case that suppress union speech. These violations show that, contrary to the employer's claims, it does not allow its workers to express union support through other methods, and I'm going to jump right to the record. In the other Tesla case, there was one trial, and then the cases were split before the Board, and this is NLRB, Tesla Inc., NLRB case 370, NLRB number 101. This is footnote one I'm reading from. No party has accepted to the judge's findings that the respondent violated section 8A1 by prohibiting employees and threatening them with discharge for distributing union stickers, leaflets, and pamphlets without the respondent's approval on March 23, 2017. So I think that's very important in this record. What does that have to do with the dispute that's before us regarding the availability of stickers on the black uniforms? It's that Tesla keeps repeating that they allow workers to wear stickers and communicate through other methods, and that's not true. Workers were told by a manager on that date that they could not wear stickers, and so that's just... But what in our record supports that? The animus and the actual, it's pretext, you can't speak through stickers and stencils and armbands. What in the record in this case? It's the same case. That's in the record. I can pull up the... But what about this finding that we were opposing counsel was being asked about, where the Board itself didn't find any of this? The Board also found this, so I can't explain why, maybe in some cases Tesla was allowing stickers, but in other cases they weren't. So the policy... If that's correct, if it's inconsistent, isn't this then a world color situation? We would remand to conclusively support Tesla's current position that they allow all sorts of methods of expression. Well, I don't think remand's necessary in this case, because in this case the facts show that the workers switched to wearing UAW shirts only after the employer unlawfully prohibited several other forms of communication. So as you follow the progression here, in late 2016 the employer banned workers from speaking to the media about conditions in the plant, in February 2017 the employer stopped workers from distributing union flyers, criticized, and these are all findings of the Board that were not appealed by Tesla. Right. So just focusing, how would you answer my question, which is, is your position, your client's position, that every employer in the United States that has a uniform policy, that is presumptively unlawful, without a special circumstance? We're only talking here about workers that do not face customers. It's a yes or no question. I would say no, because we're only talking about workers that do not face customers or are not part of the company's public image. So no, not all employers. These workers were never seen by the public. I get, I know that is out there in the law. That doesn't, it doesn't seem to accommodate employers' legitimate interest in the spirit and the uniformity of all employees. That's sort of saying something special about when you deal with outsiders. And I understand in the hospital context that's been so. But I think what these employers across the country, Tesla here, are just saying, we want Team Tesla. You work for us, you're part of Team Tesla. And I just have a hard time thinking that's presumptively unlawful. As long as you can express, and I know you're vehemently saying what we were told today is untrue, they actually are not allowing your union people to express ultimately. If that's true, then it's just, I think it's controlled by Supreme Court law. They're in violation if there aren't alternative ways. But we've just been told all sorts of items are permitted. So it's the apparel item, to help me with your time running out. I don't see the law saying neutral with alternative expressions still lets union employees say, we're going to wear our shirt, not the uniform. I would go back to the cases about jackets that my co-counsel. That's Meyer and the Sixth Circuit. The Sixth Circuit's law is very turbulent, because they, of course, came out with Burger King, too. And then it's just hard to reconcile. Yes, and it also says that the NLRB has consistently enforced the law in this method in that it's the, there must be a justification for these restrictions. One, with time, what, because he listed 10 circuits, and I should have asked him this question. What is the single circuit decision that best explains why a uniform, neutral uniform policy that does allow union expression through other items is still violative? What one circuit would you say, that's the one that states the law correctly? I mean, I would go back to In-N-Out. I know that there, we're talking about a dress code, okay? The dress code is stuff on it. It's all of it. But in footnote, or the text accompanying footnote, too, I read In-N-Out to be saying, uniforms are okay as long as buttons and others can be attached. I would say this is a dress code. The actual, quote, unquote, uniform was multiple different Tesla t-shirts in different colors  so this isn't like everyone standing in a military uniform. These are all different Tesla shirts and they, different colors. So the workers did look different in their different Tesla shirts. The only difference here is the logo on the shirt, and the company prohibited the union logo but allowed all different Tesla logos. All right. Thank you, Mr. Curry. Thank you. Hello? Thank you, Your Honor. With the factual assertion. Of course. So I think Mr. Curry was referring to an isolated incident from March 23rd, which is about five months before the TeamWear policies enforcement went into effect here, where the board found, and this is at the ALJ's decision 6546, that one supervisor told his team of a couple dozen employees that passing out stickers, pamphlets, or other written materials could be considered an act of vandalism. And the board found that that was a violation. There was, the parties disputed exactly what was said. But that was a single isolated incident, not something that had any bearing on the board's decision when it came to August of that same year. And even that incident didn't say that employees were not allowed to wear stickers. The concern ostensibly was about passing out things that could then be, you know, considered an act of vandalism. And our position therefore is that that isn't a factual dispute that bears on the issue that's before this court here because of the board's finding that employees were continued to be allowed to wear union stickers as of August at 6641. That there's no need for the remand that was necessary in world color because the board has already resolved the factual question about whether stickers could be attached to the uniform. And so we would submit that the proper remedy to go to your question, Judge Southwick, if the board were to agree with our legal position, would be the same outcome that happened on remand in world color. Once the board there decided that the addition of stickers was permitted by the employer, it dismissed the complaint. And I think that that makes sense because the implication of that conclusion as a factual matter is that there hasn't been a meaningful infringement on the employee's ability to communicate their support for the union. And that's the same scenario we have here given the ability to add union stickers. NLRB's counsel did mention that the stickers are pretty small, but of course we didn't make the stickers and we didn't prohibit the addition of bigger stickers. At least there's nothing in the record that suggests that we did. That was not part of the board's rationale, that stickers were somehow impermissible. Instead, they adopted quite explicitly the rather startling proposition that any infringement on employee's ability to communicate their views is presumptively unlawful. That's a... When you speak to the size of the sticker, the same would apply, I assume, to the number of stickers? Correct. And there is testimony that we cited, I think, in our reply brief and in one of our briefs in any event in this court, that there were employees who added many stickers to their uniforms, not just a single one. And again, that wasn't something that Tesla tried to restrict. If it did turn out in a case where it mattered to the board that stickers were impermissible, then we might be into a situation, as Judge Higginson was suggesting, where some alternative method besides stickers would be necessary. But we're not talking about a policy such as board counsel was describing in Long Beach Memorial Medical Center where, you know, an employer was saying, yeah, if you want us to express your views, get a tattoo that supports... say you support the union. That's not anything like what we had in this case. Instead, Tesla was trying to respect... What about the public-facing argument? I'm specifically drawing attention to the Sixth Circuit mire, which is the Tesla rule would be fine for anyone facing the public, but it isn't fine for people behind. Well, the board hasn't traditionally drawn a distinction about whether the special circumstances test applies based on whether the employees are public-facing or non-public-facing. So I'm not sure what board counsel was suggesting as the sort of upshot of that argument. I will note that in mire, there was, in the board's factual recitation, evidence to support the idea that some other non-company, non-union jackets were permitted by the employer. And so it wasn't really a neutral policy where everyone had to wear the company jackets, even the non-public-facing folks who worked in the back of the operation. So I think that all of those cases that board counsel cites are not really digging into the issues, which is why the dissent in the Stabila's case said that that was an issue of first impression, whether stickers or the addition of union insignia are sufficient in place of being able to replace a union... ..a uniform altogether. Unless the Court has other further questions, I see my time is running out, and we would ask that the petition be granted and enforcement be denied. Thank you, Mr Cannelli. Your case is under submission. The Court will take a brief recess before hearing the final two cases.